**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gregory ROBINSON, et al., Defendants,**

**Barbara A. Butler, Appellant.**

**No. 89–4076.**

United States Court of Appeals, Eleventh Circuit.

Feb. 7, 1991.

---

William J. Sheppard, Cyra C. O'Daniel, Jacksonville, Fla., for appellant.

Thomas E. Morris, Kathleen A. O'Malley, Asst. U.S. Attys., Jacksonville, Fla., for plaintiff-appellee.

Before JOHNSON and BIRCH, Circuit Judges, and MERHIGE *, Senior District Judge.

JOHNSON, Circuit Judge:

This case arises from the district court's holding of attorney Barbara A. Butler in contempt under the summary contempt procedure authorized by Federal Rule of Criminal Procedure 42(a). In this appeal, Butler argues that the conduct for which she was cited does not constitute contempt. We agree and therefore reverse the district court and dismiss the case.

## I. BACKGROUND OF THE CASE

Barbara A. Butler, an attorney in Jacksonville, Florida, was court appointed to represent Gregory Robinson, the lead defendant in a multi-defendant cocaine conspiracy trial. The jury was selected on November 7, 1989. Presentation of evidence commenced on November 13, 1989, with Judge John H. Moore, II, Middle District of Florida, presiding. As the trial progressed, tension began to develop between Judge Moore and Butler.[1]

---

* Honorable Robert R. Merhige, Jr., Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

1. For example, on November 13, 1989, the following exchange took place during the government's direct examination of a witness:

> Q. If we were going back and saying we were in a business management class again, are you in a position, with your relationship with Mr. Robinson—
> MS. BUTLER: Objection, your Honor, to the hypothetical nature of the question. We're not in a business class.
> THE COURT: Sustained.

> MS. BUTLER: And I doubt that this young lady has ever been in one.
> MR. DEVEREAUX: Objection, your Honor, to the statements by counsel. I think it's totally inappropriate.
> THE COURT: It is. And it will not happen again.
> MS. BUTLER: Yes, sir.

On November 14, 1989, after Butler had reiterated a question to which Judge Moore had already sustained an objection, Judge Moore stated outside the presence of the jury:

> THE COURT: Ms. Butler, when I sustain an objection to a question, I don't expect that question to be asked over and over again.

On November 16, 1989, the fifth day of trial, the government attempted to introduce into evidence some photographs of a location relevant to the crime. The court permitted Butler to take the witness on voir dire examination in which she attempted to show that the witness had no independent recollection of the location. Butler then said to the judge, in front of the jury, "Your Honor, I would submit he has no independent recollection and that this is the only way he can identify it, and I would object. That's what the Government has done all throughout this trial."[2] Judge Moore had the jury removed and then asked Butler, "For that last comment about what the government has done throughout this trial, Ms. Butler, why don't you just right now advise this court as to why you shouldn't be held in contempt. Make a statement like that in front of the jury." Butler asked for additional time to respond. The judge, however, found her in contempt and sentenced her to spend the first week-end after the conclusion of the trial in the custody of the United States Marshal.[3]

■ On December 4, 1989, Judge Moore entered a written contempt order. The summary order, however, failed to recite the facts upon which the contempt finding was based as required by Federal Rule of Criminal Procedure 42(a).[4] The trial concluded with jury verdicts of guilty on December 13. On December 14, Butler filed a notice of appeal of the contempt order and a motion to stay the imposition of the sentence which was set to begin on December 15. The court stayed the execution of the sentence, and this appeal ensued. In light of the district court's failure to comply with Rule 42(a), this appeal requires us to examine the record and determine whether there exists adequate support for the district court's contempt finding and whether the remedy for that lack of compliance with Rule 42(a) is reversal and dismissal or remand.

The next time that that happens, I will cite the person causing it for contempt of this Court.
On November 15, 1989, after Butler had cross-examined a witness in an attempt to attack the chain of custody of a tape recording which the government was attempting to introduce into evidence, Judge Moore had the jury taken out and then stated:
THE COURT: Ms. Butler, you are, without a doubt, the most obnoxious obstructionist lawyer, I think, who's ever been in this courtroom at least. There's absolutely no reason in the world to waste time like you're wasting time on this case by going through that type of chain of custody. I don't believe there's a criminal defense lawyer in this city who would object to that tape on the basis of the chain of custody. And if you want to do that, I guess you've got every right in the world to do so. But by doing so, you just epitomized the reason that the public thinks of lawyers as less than used car salesmen.
We'll be in recess for ten minutes and then we'll come back. And if you want to keep this up, you just keep it up.
MS. BUTLER: Thank you, sir.

2. Butler had, in fact, objected throughout the trial that the government was using photographs to lead the witnesses. The court consistently overruled the objection. For example, on November 13, the first day of testimony, Butler objected:
MS. BUTLER: Your Honor, I would object. It appears that the Government is getting the information from Miss Taylor by showing her a picture of the next place they want her to testify about, and it—she doesn't state the address until Mr. Devereaux shows her the picture, and I would object that he's leading with his exhibits.
MR. DEVEREAUX: Your Honor, the United States—
THE COURT: Overruled.

3. After the jury returned, Judge Moore sustained Butler's objection to admission of the photographs.

4. Fed.R.Crim.P. 42(a) states:
A criminal contempt may be punished summarily if the judge certifies that the judge saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.
Thus, if a court opts to use this summary procedure instead of the Rule 42(b) procedure which requires notice and a hearing, then the court must specifically recite in the contempt order the circumstances leading to the finding of contempt. This requirement is strictly observed in order to permit informed appellate review. *United States v. Schrimsher (In re Charles D. Butts)*, 493 F.2d 842, 845 (5th Cir. 1974) (reversing and dismissing contempt proceedings against an attorney where the district court failed to comply with Rule 42(a)). The government concedes that the written order issued by Judge Moore did not comply with Rule 42(a).

## II. ANALYSIS

In reviewing the sufficiency of the evidence in support of a finding of criminal contempt, "we must determine whether the evidence, construed in the light most favorable to the government, would permit the trier of fact to find the defendant guilty beyond a reasonable doubt." *United States v. Burstyn*, 878 F.2d 1322, 1324 (11th Cir.1989). "The conviction will be sustained if there is substantial evidence to support it." *Id.* "To support a conviction, the government must prove: (1) that the court entered a lawful order of reasonable specificity; (2) the order was violated; and (3) the violation was willful." *Id.* Butler's challenge to the sufficiency of the criminal contempt finding is based on the grounds that (1) the court's ruling was not specific and she was thus not sufficiently warned of it, and (2) she did not violate the court's order willfully.

### A. *Specificity*

■ "The reasonableness of the specificity of an order is a question of fact and must be evaluated in the context in which it is entered and the audience to which it is addressed." *United States v. Turner (In re Howard Moore, Jr.)*, 812 F.2d 1552, 1565 (11th Cir.1987). The government claims that the incident for which the court found Butler in contempt, her statement relating to admission of the photographs, was an improper speaking objection which violated the Local Rule of the Middle District of Florida 5.03(b)(12). That rule states: "In making objections counsel should state only the legal grounds for the objection and should withhold all further comment or argument unless elaboration is requested by the Court." As a member of the bar of the Middle District of Florida, Butler is charged with knowledge of the rules. *See* Local Rule 2.01(b) (requiring members of the bar to certify their familiarity with the local rules).

■ The language in Rule 5.03(b)(12), however, is precatory rather than mandatory. Moreover, according to Rule 5.03(a), the rules in chapter 5 are neither mandatorily nor uniformly enforced inasmuch as individual district judges may impose rules in addition to those listed or may excuse compliance with those listed. Therefore, we cannot easily assume that Butler was on notice of the judge's rule against speaking objections simply because of her membership in the bar.

Butler argues that the court did not give a specific warning that the statement she made in regard to the photographs would constitute contempt. She admits that the court gave her a warning not to continue to ask a question after an objection to that question had been sustained. *See supra* note 1. But asking questions was not the reason for which the court found Butler in contempt. The court also admonished Butler not to argue with the court's rulings.[5]

---

5. On November 15, 1989, as Butler cross-examined a witness, Judge Moore had the jury removed and the following exchange took place:

THE COURT: Ms. Butler, when you ask a witness a question, you must give that witness an opportunity to answer that question. When the Court says something to you, the Court does not ask you to argue with the Court. Now, do you understand that?

MS. BUTLER: Yes, sir.

THE COURT: Is there any way I can get through your head—

MS. BUTLER: Yes, sir.

THE COURT: —that you got to act like a lawyer out there?

MS. BUTLER: The problem is, I don't believe that's the question that I asked. The question that—

THE COURT: Well, you're not going to argue with me. Do you understand that? Now, if you want that young lady sitting over there on that wall to put handcuffs on you and take you downstairs to jail, all you have to do is keep up your routine right now and that's where you're going to go.

MS. BUTLER: Your Honor, I want the question that I asked answered, or I want the ability to ask the question that I meant to ask. That is the only thing I—

THE COURT: Well, I don't know what you meant to do. I know what you did.

MS. BUTLER: What I believe I asked is for her to step down and look at the photographs to determine whether any of the locations that I have just read from the list appear in any of these photographs. And I know that 4th and Francis is one of them.

THE COURT: I asked the jury to be excused because I want you to know that you are riding on the thinnest ice that you could possibly be riding upon. And pretty soon that ice is going to break and down you go. Do you understand that now?

MS. BUTLER: Yes, sir.

But again, argumentativeness was not the enunciated reason for the court's finding. Though the court's warning against argumentativeness clearly indicates the level of the court's annoyance with Butler, it cannot be construed to constitute a clear order or warning against speaking objections. The government, however, points to the court's exhortation concerning Butler's comment about a witness never having been in a business class as a specific warning against speaking objections. *See supra* note 1. Butler admits that her remark regarding the business class was sarcastic and inappropriate. The remark, however, was made after the objection was sustained and so was not technically a speaking objection. It would, therefore, be difficult to construe Judge Moore's scolding regarding the business class remark to be a specific order against speaking objections. At any rate, even if Butler's remark could in some way be considered a speaking objection, the judge's statement that the remark was inappropriate is not comparable in specificity to orders this Court has previously found specific enough to sustain a finding of contempt. *See, e.g., Turner,* 812 F.2d at 1564 (in which the district judge told attorneys that an issue was not to be submitted to the jury and "if anybody makes that argument to this jury they are going to be held in contempt and I want that clearly understood.").

### B. *Willfulness*

"Willfulness" is defined as " 'a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order.' " *United States v. Baldwin (In re Steven Jackson),* 770 F.2d 1550, 1558 (11th Cir.1985) (quoting *Falstaff Brewing Corp. v. Miller Brewing Co.,* 702 F.2d 770, 782 (9th Cir.1983)), *cert. denied,* 475 U.S. 1120, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986). In applying this standard, this Court has found an attorney willfully in

contempt where it could be shown that the attorney knew of a specific court order and was aware that noncompliance with it would constitute disobedience to the court. *See, e.g., Baldwin,* 770 F.2d at 1558 (where attorney knew he was ordered to appear in court on a certain date and had been warned that his failure to do so would make him subject to contempt, his conduct was deemed willful). In the instant case, however, it has not been shown that Butler was aware of the court's strong prohibition against speaking objections. It therefore cannot be assumed that her violation was willful. Rather, it would appear that her statement in regard to the photographs was more of an "inadvertent or negligent violation." *See id.*

Moreover, the Supreme Court has stated that "it is the right of counsel for every litigant to press his claim, even if it appears farfetched and untenable, to obtain the court's ruling. Full enjoyment of that right, with due allowance for the heat of controversy, will be protected by appellate courts when infringed by trial courts." *Sacher v. United States,* 343 U.S. 1, 9, 72 S.Ct. 451, 455, 96 L.Ed. 717 (1952). Rule 42(a) was thus envisioned for use in the "unusual situation ... where instant action is necessary to protect the judicial institution itself." *Harris v. United States,* 382 U.S. 162, 167, 86 S.Ct. 352, 355, 15 L.Ed.2d 240 (1965). In light of the Supreme Court's guidance, Butler's action in the heat of pressing her claim should not be deemed willful and contemptuous.

In sum, the government has not shown, and there is nothing in the trial transcript included in the record on appeal that could show, beyond a reasonable doubt with substantial evidence that Butler willfully violated a specific order of the district court. *See Burstyn,* 878 F.2d at 1324. Butler's conduct, therefore, though perhaps lacking decorum, cannot be said to constitute contempt. Consequently, a remand to the district court to allow compliance with Rule 42(a) would be fruitless.[6]

---

**6.** The government argues for remand rather than reversal and dismissal, basing its argument on *United States v. Vano (In re Herbert Shafera),* 496 F.2d 1195 (5th Cir.1974), in which this Court remanded a contempt case for the limited purpose of allowing the district court to comply with the formalities of Rule 42(a). This three-paragraph per curiam opinion relates little of

the background of the case. It does, however, state that the record was "entirely adequate to support the contempt adjudication." *Id.* at 1196. The *Vano* remand thus merely allowed the district court to comply with the formalities of Rule 42(a) once the appellate court had determined that the contempt finding was appropri-

### III. CONCLUSION

For these reasons, we REVERSE the district court's contempt order and DISMISS the proceedings against attorney Butler.

ate. As stated in the discussion above, our culling of the record reveals no support for a con- tempt finding against Butler. The *Vano* case is therefore inapposite.