[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13832

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

FLOYD ELLIS WYCHE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20051-CMA-1

_____

_____

No. 21-14301

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

FLOYD ELLIS WYCHE, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20051-CMA-1

_____

Before JORDAN, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

Floyd Wyche pleaded guilty to conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); three counts of

Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2; and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2. The district court sentenced Wyche to 147 months' imprisonment and ordered him to pay $4,442 in restitution. Wyche appeals his convictions, and resulting sentence, arguing that (1) his guilty plea was not knowing and voluntary because the district court failed to determine that he understood the nature of aiding and abetting liability; (2) his sentence is procedurally unreasonable because the district court failed to explain why it rejected his arguments in support of a downward variance sentence; and (3) aiding and abetting a Hobbs Act robbery does not qualify as a "crime of violence" under 18 U.S.C. § 924(c). We conclude that his guilty plea was knowing and voluntary, that he waived his right to appeal, and affirm.

## I.

First, Wyche argues that his guilty plea was not knowing and voluntary because the district court violated a "core concern" of Federal Rule of Criminal Procedure 11 by failing to ensure that Wyche understood the nature of aiding and abetting liability for the substantive charges to which he pleaded guilty.

To ensure that a defendant's guilty plea is voluntary and knowing, the district court must address three "core concerns" of Rule 11: (1) whether the defendant entered the guilty plea free from coercion; (2) whether the defendant understands the nature of the charges; and (3) whether the defendant understands the

consequences of the guilty plea. *United States v. Presendieu*, 880 F.3d 1228, 1238 (11th Cir. 2018). Wyche argues that the district court did not satisfy this second core concern.

Because Wyche neither objected to the adequacy of his plea proceedings before the district court, nor moved to withdraw the plea, we review the district court's compliance with Rule 11 only for plain error. *United States v. Moriarty*, 429 F.3d 1012, 1018-19 (11th Cir. 2005) (citations omitted). A "defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

We review "on a case-by-case basis whether the district court adequately ensured that a defendant understood the nature of the charge." *United States v. James*, 210 F.3d 1342, 1344 (11th Cir. 2000). That assessment considers the entire record, focusing on the complexity of the charges, the defendant's intelligence and sophistication, the contents of the factual proffer and the defendant's assent to that proffer, the defendant's admission to committing the crime, and the court's factual finding that the defendant understood the nature of the charges and entered a voluntary and knowing guilty plea. *See Presendieu*, 880 F.3d at 123841.

According to Wyche, the district court "failed to ensure that [he] understood the nature of aiding and abetting liability for the substantive charges to which he pleaded guilty." Wyche points out

that aiding and abetting liability was not mentioned in his plea agreement and neither the district court nor the prosecutor explicitly referenced aiding and abetting liability when explaining his substantive charges. And he argues that "nothing in the record shows anyone else ever explained the legal requirements for aiding and abetting liability to" him, even though "[t]he record reflects [his] confusion about abetting and abetting liability."

We disagree. Upon consideration of the entire record, we affirm the district court's determination that Wyche understood the nature of the charges against him, including those based on aiding and abetting liability. Wyche's plea agreement was accompanied by a factual proffer, signed by Wyche, in which Wyche "agree[d] that [he] . . . aided and abetted the commission of the robberies" by serving as the getaway driver and location scout. Wyche confirmed at the plea colloquy that he read this factual proffer and discussed it with his counsel. The district court also provided Wyche a detailed and lengthy summary of the factual proffer during the plea colloquy, recounting Wyche's role as the getaway driver and location scout during the robberies and Wyche's agreement that he "aided and abetted the commission of these robberies." Wyche confirmed that "all of these facts" were "true and correct" and would be sufficient to prove his guilt "beyond a reasonable doubt" at trial.

Wyche also confirmed that he had received "a copy of the indictment containing the written charges against" him, had "fully discussed that indictment and [his] case in general" with his

counsel, and was "fully satisfied with [his legal] representation." Wyche's counsel added that he and Wyche had "gone over the indictment in its entirety several times." And Wyche's indictment explicitly charged the Hobbs Act robbery counts and the firearm count under 18 U.S.C. § 2—the statute criminalizing aiding or abetting the commission of another crime. Wyche agreed to plead guilty to those aiding-and-abetting counts in his plea agreement. And Wyche's counsel explained during the plea colloquy that he and Wyche had "go[ne] over the plea agreement in its entirety," "reviewed all of the Government's discovery," "gone over the case law" relating to his charges, and "discussed various defenses." Wyche confirmed that he had the opportunity to read his plea agreement and discuss it with his counsel.

The district court stated the names of the charges to which Wyche was pleading guilty, and Wyche confirmed that he understood these charges. The government also set forth the elements of these offenses. Wyche's counsel confirmed that the government's recitation of the elements was accurate, and clarified that, although Wyche had not himself possessed or brandished a firearm, he had explained to Wyche that the crime "could apply to [Wyche] in the sense that he's a codefendant who aided and abetted and conspired with Mr. Smith."

Wyche stated that he agreed with "most of" his counsel's statements. When asked if there was a statement with which he disagreed, Wyche responded, "No, only that the government, about the brandishing part, about me robbing somebody."

Wyche's counsel said Wyche was trying to clarify that he had not himself possessed or brandished a firearm during the robberies, but rather was the getaway driver. Wyche confirmed that he agreed with this characterization of his comment.

As to Wyche's intelligence and sophistication, Wyche testified that he had a twelfth-grade education and no physical or mental conditions that would prevent him from understanding the proceedings. He also confirmed that no one was "putting pressure upon [him], forcing [him], or coercing [him] to plead guilty and agree to the terms contained in the written plea agreement" and that he was pleading guilty of his own free will. Finally, Wyche confirmed that he understood the rights he was giving up by pleading guilty.

These facts support the district court's conclusion that Wyche understood the nature of the charges against him, including those based on aiding and abetting liability. *See United States v. Wiggins*, 131 F.3d 1440, 1442 (11th Cir. 1997) (no plain error, despite that district court did not outline each element of his offense or ask him if he understood those elements, where it told the defendant to listen to the government's recitation of the factual proffer and the defendant then admitted to those facts); *Presendieu*, 880 F.3d at 1239, 1241 ("[E]ven if these crimes are considered to be more complex than the simplest crimes, the detailed nature of the seven-page factual proffer accompanying Presendieu's written plea agreement and his express assent to that proffer show that

Presendieu well understood the nature of the two charges against him.").

That the district court and prosecutor did not explicitly mention aiding and abetting liability when stating the charges against Wyche and the elements of those charges does not amount to plain error. *See United States v. Camacho*, 233 F.3d 1308, 1317 (11th Cir. 2000) ("Although the district court in this case did not explain the requirements for a conviction under an aiding and abetting theory or discuss directly the significance of the aiding and abetting theory to Appellant, as long as the factual proffer would support Appellant's conviction under the aiding and abetting theory, the district court's acceptance of the factual proffer as sufficient was proper."); *see also Presendieu*, 880 F.3d at 1238 ("Importantly, Rule 11 does not specify that a district court must list the elements of an offense.").

Indeed, we rejected this precise argument in *United States v. DePace*, 120 F.3d 233 (11th Cir. 1997). There, the government charged the defendant based exclusively on a theory of aiding and abetting liability. *Id.* at 236. Although neither the indictment, the plea agreement, the district court's explanation of the charge, nor the government's explanation of the essential elements of the crime explained the aiding and abetting theory, we held that the district court satisfied Rule 11's second core concern. *Id.* at 236‑37. We relied upon the fact that the defendant agreed with the factual proffer during the plea colloquy, admitted that he had assisted in the underlying offense, confirmed that he had reviewed the plea

agreement and indictment with his counsel, and never objected or expressed any confusion throughout the proceeding. *Id.* at 238; *see also Wiggins*, 131 F.3d at 1442–43 (upholding district court's determination that defendant understood nature of charge where district court failed to explain elements of offense but where defendant admitted to robbing banks, pled guilty unequivocally, and stated that he understood the charges against him).

Wyche seeks to distinguish *DePace* on the ground that Wyche, unlike DePace, expressed confusion about aiding and abetting liability during the plea colloquy. We disagree. Wyche never stated that he was confused or did not understand the nature of the charges against him. *Camacho*, 233 F.3d at 1316 ("Appellant, who was represented by counsel, never voiced any confusion about the charge to which she was pleading, nor did she object to the district court's handling of the Rule 11 inquiry."). Wyche's statement that he disagreed with the government to the extent it was suggesting that Wyche had himself robbed anyone—as opposed to assisting as the getaway driver—does not evince confusion about the nature of aiding and abetting liability. To the contrary, it suggests that Wyche himself understood that, by virtue of the aiding and abetting statute, he was pleading guilty based on his assistance in the robbery. This interpretation of the interaction at the plea colloquy does not amount to plain error.

At bottom, "the record as a whole establishes that" Wyche "was aware of the charges to which he was pleading guilty," "was sufficiently intelligent to understand the nature of those charges,"

"understood that the facts set forth in the factual proffer established that he was guilty of those . . . offenses," "had discussed the . . . charges and the facts in the proffer with his attorney," and "unequivocally and intelligently pled guilty to [the] charges in the plea agreement." *Presendieu*, 880 F.3d at 1241–42. His plea was thus knowing and voluntary.

## II.

Second, Wyche challenges two aspects of his sentence and restitution order. First, he argues that his sentence is procedurally unreasonable because the district court failed to explain why it rejected some of his arguments in support of a lower sentence, such as his "extended period of law-abiding conduct, during which he held a stable job and cared for his family," his "low risk of recidivism," and "the general deterrence provide[d] by the lengthy mandatory minimum sentence." Second, he argues that the district court erred in failing to make his restitution judgment joint and several with the overall restitution order entered as to his codefendant. Wyche's sentence appeal waiver precludes these challenges.

We review the validity of a sentence appeal waiver *de novo*. *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008) (citation omitted). We will enforce such a waiver so long as the defendant entered it knowingly and voluntarily. *United States v. Bushert*, 997 F.2d 1343, 135051 (11th Cir. 1993). We will find an appeal waiver knowing and voluntary if either (1) the district court

questioned the defendant about the waiver during the plea collo-
quy, or (2) the record makes clear that the defendant otherwise un-
derstood the full significance of the waiver. *Id.* at 1351.

Wyche's plea agreement included a waiver of his right to ap-
peal his sentence, "including any restitution order, or to appeal the
manner in which the sentence was imposed, unless the sentence
exceeds the maximum permitted by statute or is the result of an
upward departure and/or an upward variance from the advisory
guideline range." Wyche was sentenced to the bottom of the guide-
line range, well below the statutory maximum, and the govern-
ment has not appealed the sentence. Accordingly, none of the pro-
vision's exceptions apply. The sentence appeal waiver thus bars
Wyche's challenges to his sentence provided it was entered know-
ingly and voluntarily. We hold that it was.

The plea agreement stated that, by signing the agreement,
Wyche was acknowledging that he had discussed the appeal waiver
with his attorney and that he agreed to request, with the govern-
ment, that the district court enter a specific finding that he know-
ingly and voluntarily waived his right to appeal his sentence or con-
viction. And the district court specifically questioned Wyche about
the appeal waiver during the plea colloquy, during which Wyche
confirmed that he discussed the waiver with his attorney and that
he was knowingly and voluntarily giving up the right to appeal.
These facts suffice to demonstrate that the waiver was knowing
and voluntary. *See Bushert*, 997 F.2d at 1351; *United States v.
Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001) ("Here, the waiver

provision was referenced during Weaver's Rule 11 plea colloquy and Weaver agreed that she understood the provision and that she entered into it freely and voluntarily. Thus, her waiver is valid.").

## III.

Third, Wyche urges us to vacate his 18 U.S.C. § 924(c) conviction on the ground that aiding and abetting a Hobbs Act robbery is not a "crime of violence." In relevant part, Section 934(c) says that a crime of violence is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."18 U.S.C. § 924(c)(3)(A). We held that the crime of aiding and abetting a Hobbs Act robbery meets this definition in *In re Colton*, 826 F.3d 1301, 1305 (11th Cir. 2016). Wyche acknowledges that our decision in *Colton* conflicts with his position, but he argues that the Supreme Court's recent decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022) "overrules" *Colton*.

Wyche's argument is foreclosed by the appeal waiver in his plea agreement. Wyche agreed in his plea agreement that he would not appeal on the ground that "the admitted conduct does not fall within the scope of the statutes of conviction." *See United States v. DiFalco*, 837 F.3d 1207, 1215 (11th Cir. 2016) ("[A] waiver of appellate rights applies not only to frivolous claims, but also to difficult and debatable legal issues.") (citations omitted); *King v. United States*, 41 F.4th 1363, 1370 (11th Cir. 2022) (holding that we will "enforc[e] appeal waivers against claims based on new constitutional rules"). As we have already explained, this waiver was

knowing and voluntary. For these reasons, we do not address the merits of Wyche's argument about whether aiding and abetting a Hobbs Act robbery meets the definition of a crime of violence under Section 924(c).

## IV.

For the foregoing reasons, we **AFFIRM** Wyche's sentence and conviction.